IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**GILBERT BORREGO,**

       **Plaintiff,**

v.                                                        No. 1:21-cv-01042-DHU-LF

**NEW MEXICO LIVESTOCK BOARD,**
**SPECIAL AGENT DENNIS ALARID and**
**SPECIAL AGENT BENJAMIN GONZALES,**

       **Defendants.**

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendants Special Agent Dennis Alarid and Special Agent Benjamin Gonzales (*hereinafter* "Defendants") Motion for Summary Judgement requesting dismissal of excessive force claim based on qualified immunity. Doc. 12. The Court held a hearing on the motion on June 12, 2023. Having considered the briefing, the record of the case, the arguments presented at the hearing, and applicable law, the Court concludes that the Defendants' Motion for Summary Judgement should be GRANTED.

**I.**
**FACTUAL BACKGROUND**

**A. Investigation of Officers and Procurement of Arrest Warrant**

The following facts are either undisputed or construed in the light most favorable to Plaintiff as demanded by the summary judgement standards.[1] The reporting rancher, Mr. Garcia, reported to the New Mexico Livestock Board ("NMLB") that one of his calves had Plaintiff's

---

[1] *See Simms v. Okla. Ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999) (The Court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.").

1

brand on it. Undisputed Material Facts ("UMF") ¶ 1, Doc. 12. On October 14, 2020, Defendant Alarid, an officer of the NMLB, investigated the rancher's report and observed the cow owned by Mr. Garcia nursing a calf bearing Plaintiff's tag. *Id.* at ¶ 2. Defendant Alarid collected hair follicles from the mother cow and the calf and sent them to the University of California – Davis for testing. *Id.* at ¶ 4. On December 3, 2020, Defendant Alarid received the hair follicle test results establishing Mr. Garcia's ownership of the calf tagged and branded by Plaintiff. *Id.* at ¶ 5. Defendant Alarid filed a Criminal Complaint for Unlawful Branding under NMSA 1978, Section 30-18-3(A) against Plaintiff and obtained a corresponding Arrest Warrant on December 7, 2020. *Id.* at ¶ 6.

### B. Arrest of Plaintiff and Use of Force

Defendants Alarid and Gonzales executed the arrest warrant for Plaintiff at his home on December 8, 2020. *Id.* ¶ 7, Doc. At the time of the arrest, Plaintiff was handcuffed with his hands behind his back and ordered to sit in the NMLB vehicle. *Id.* at ¶ 8; Doc. 12 Ex. 4, at 0:00:21.[2] Being unable to use his hands, Plaintiff was assisted into the truck by Defendant Gonzales. *See id.* Ex. 4, at 0:00:38. Plaintiff complained of pain in his wrist and requested to be handcuffed with his hands in front of his body. UMF ¶ 9, Doc. 12; Doc. 12 Ex 4., at 0:00:51. Defendants Alarid and Gonzales responded to Plaintiff's complaints within seconds and readjusted the Plaintiff's handcuffs to the front of his body. *See id.* Ex. 4, at 0:0051-0:02:10. While Defendant Alarid adjusted Plaintiff's handcuffs, Plaintiff stated, "don't put this one tight because it hurts". *Id.* Ex. 4, at 0:01:55 – 0:02:09. Defendant Alarid then instructed Plaintiff to place his sleeve over his wrist before applying the handcuff. *See id.* Ex. 4, at 0:01:57. Moments later, Plaintiff complained of

---

[2] Body cameras worn by Defendants Alarid and Gonzales recorded the events on December 08, 2020. The Court describes the facts "in light depicted by the videotape," *Scott v. Harris*, 550 U.S. 372, 381 (2007), and construes any recordings, gaps, and uncertainties in the light most favorable to Plaintiff. *See Carabajal v. City of Cheyenne Wyoming*, 847 F.3d 1203, 1207 (10th Cir. 2017).

discomfort a second time while being transported by Defendants to a local hospital for medical clearance to remain in custody. *See id.* Ex. 4, at 0:13:47. Almost immediately, Defendant Alarid informed Plaintiff that he would stop the vehicle to readjust the handcuffs. *Id.* Ex. 4, at 0:13:57. Prior to coming to a stop, however, Plaintiff indicated that he "can make it to the hospital" without readjusting the handcuffs. *Id.* Ex. 4, at 0:14:23. Despite Plaintiff's statement, Defendant Alarid stopped the vehicle and readjusted Plaintiff's handcuffs. *See id.* Ex. 4, at 0:14:23 – 0:15:58. Throughout the encounter Defendants readjusted Plaintiff's handcuffs twice after being informed of Plaintiff's discomfort. *See id.* Ex. 4, at 0:00:51, and 0:13:47.

## II.
## PROCEDURAL BACKGROUND

On September 29, 2021, Plaintiff filed his Complaint in the First Judicial District of the State of New Mexico, claiming violations of the New Mexico Tort Claims Act ("NMTCA"), and violations of the Plaintiff's Fourteenth Amendment right to bodily integrity and his Fourth Amendment right to be free from excessive force and unreasonable search and seizure. Doc. 1-1. On October 28, 2021, Defendants removed the action to federal court. Doc. 1. In federal court, Defendants moved for summary judgment on the basis of qualified immunity. Doc. 12. This Court held a hearing on Defendants' Motion for Summary Judgment on June 12, 2023. Doc. 25.

## III.
## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The moving party has the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). If the movant can make a showing that there is no genuine dispute of material fact, "the non-moving party must make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Sec. & Exch. Comm'n v. GenAudio Inc.*, 32 F.4th 902, 920 (10th Cir. 2022) (internal quotations omitted). At the summary judgment stage, it is the Court's duty to determine if there is a genuine issue for trial. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). In summary judgement motions based on qualified immunity, claims "are subject to a somewhat different analysis on review than are other summary judgment rulings." *Oliver v. Woods*, 209 F.3d 1179, 1184 (10th Cir. 2000) (citing *Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995)).

Qualified immunity is designed to shield "public officials … from damages actions unless their conduct was unreasonable in light of clearly established law." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (citing *Elder v. Halloway*, 510 U.S. 510, 512 (1994)). Conduct is unreasonable when the plaintiff can "show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008) (internal quotation marks omitted). Finally, when reviewing a motion for summary judgement, this Court must construe the facts in the light most favorable to the plaintiff as the nonmoving party and "a plaintiff's version of the facts must find support in the record." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009).

## IV.
## DISCUSSION

**1. Summary Judgment is Granted to Defendants Alarid and Gonzales**

    **a. Constitutional Violation**

In response to Defendants motion for summary judgement based on qualified immunity, Plaintiff alleges he has satisfied his burden. In addressing whether a constitutional right was violated, Plaintiff alleges that Defendants violated his Fourth Amendment right by using excessive force when handcuffing him. When construing the facts in the light most favorable to the Plaintiff, this Court holds that the evidence proffered by Plaintiff would not permit a reasonable jury to find that Defendants used unreasonable (or excessive) force when arresting Plaintiff.

Excessive force claims arising out of a law enforcement investigation implicate the Fourth Amendment and its protections against unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989). To establish a Fourth Amendment violation, a plaintiff must demonstrate the force used by law enforcement was objectively unreasonable. *Id.* at 393–94. Whether force is unreasonable requires a careful attention to the facts and circumstances of each case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Helvie v. Jenkins*, 66 F.4th 1227, 1237 (10th Cir. 2023) (citing *Graham*, 490 U.S. at 396).

Generally, handcuffing itself is not necessarily an exercise of excessive force when in connection with a lawful arrest. *See Mglej v. Gardner*, 974 F.3d 1151, 1166 (10th Cir. 2020) (quoting *Fisher v. City of Las Cruces*, 584 F.3d 888, 896 (10th Cir. 2009)) ("[I]n nearly every situation where an arrest is authorized ... handcuffing is appropriate."). Handcuffing is not excessive force perse because the right to make an arrest "necessarily carries with it the right to

5

use some degree of physical coercion." *Graham*, 490 U.S. at 396. In a handcuffing case "to recover on an excessive force claim, a plaintiff must show: (1) that the officers used greater force than would have been reasonably necessary to effect a lawful seizure, and (2) some actual injury caused by the unreasonable seizure that is not de minimis, be it physical or emotional." *Fisher,* 584 F.3d at 894 (citing *Cortez v. McCauley*, 478 F.3d 1108 (10th Cir. 2007)).

In some cases, unduly tight handcuffing can constitute excessive force if an arrestee can assert 1) an actual injury from the handcuffing and 2) alleges that an officer ignored the arrestee's timely complaints. *See Cortez*, 478 F.3d at 1129. In *Cortez*, the Tenth Circuit held that police officers did not exercise excessive force when they (1) grabbed the arrestee by the arm and pulled him from his home, (2) handcuffed him, (3) placed him in the back seat of a patrol car, and (4) ignored his pleas that the handcuffs were too tight and hurting him. *See id*. 1126-1129. In reaching their decision, the court reasoned that evidence of red marks on the arrestee's wrist was not an actual injury. *See id.* at 1129. Therefore, the absence of an actual injury precluded a finding against qualified immunity.

Excessive force also occurs when officers handcuff and handle an arrestee in a manner that the officers knew posed a serious risk of exacerbating an arrestee's injuries and officers were aware of the injuries. *See Fisher*, 584 F.3d at 901 (stating "It is long established law of this and other circuits that a triable claim of excessive force exists where a jury could reasonably conclude that the officer handled a cooperating arrestee in a manner that the officer knew posed a serious risk of exacerbating the arrestee's injuries, which were themselves known to the officer.") In *Fisher*, police officers knew that the arrestee had shot himself, when they arrived they saw arrestee bleeding on the ground, and when arresting him could see wounds from his biceps and stomach. *Id.* at 899. When the officers told the arrestee that he was going to be handcuffed behind his back,

the arrestee pleaded with the officers to avoid exacerbating his injuries. *Id.* Nonetheless, an officer placed his knee behind arrestee's back and handcuffed him. *Id.* at 899-900. In reviewing the surrounding circumstances, the Tenth Circuit held that the manner of conducting the handcuffing was extreme and therefore greater than necessary to conduct the arrest. *Id.* at 900. When reviewing the second part of *Cortez* analysis, the court concluded that a reasonable jury could conclude from the alleged facts that the handcuffing caused the arrestee an actual injury, more than mere "discomfort from the handcuffing, or red marks, or swelling that disappear in a few hours or days." *Id.* The court ultimately held that the arrestee sufficiently alleged a constitutional violation for qualified immunity purposes. *Id.*

Taking Plaintiff's allegations as true and viewing the evidence in the light most favorable to the Plaintiff, this Court finds the Defendants did not exercise excessive force. Unlike in *Fisher*, where officers knew that the arrestee had gunshot wounds, saw him bleeding, and handcuffed him while he was wounded on the floor, here Plaintiff was not wounded, bleeding, or arrested while he was on the floor. Defendants did not handcuff and handle Plaintiff in a manner they knew posed a serious risk to Plaintiff. The facts here are more like *Cortez* in that Defendants (1) arrived in Plaintiff's home, (2) handcuffed him, and (3) placed him in the back seat of the NMLB vehicle. However, unlike *Cortez*, where police officers ignored the arrestee's demands to readjust the handcuffs, Defendants Alarid and Gonzales responded to Plaintiff's demands to readjust his handcuffs two times within seconds of his complaints.

Plaintiff's first demand occurred moments after he was assisted into the Defendants' vehicle. Upon hearing Plaintiff complain of pain in his wrist and discomfort from the handcuffs, Defendant Alarid readjusted the handcuffs to the front of Plaintiff's body within seconds. When Plaintiff stated, "don't put this one tight because it hurts," Defendant Alarid instructed Plaintiff to

place his sleeve over his wrist. These facts do not support a finding that Defendant Alarid ignored Plaintiff's complaints or that Defendant Alarid handled Plaintiff in a manner that posed a serious risk to him.

Minutes later, while en route to the hospital for medical clearance, Plaintiff complained a second time of the handcuffs. Again, within seconds, Defendant Alarid pulled over and readjusted Plaintiff's handcuffs. In fact, before Defendant Alarid stopped the vehicle, Plaintiff indicated that he could wait in the discomfort until arriving at the hospital. Despite Plaintiff's statement, Defendant Alarid stopped the vehicle and readjusted Plaintiff's handcuffs. The evidence in the record and Defendant Alarid's readjustment of Plaintiff's handcuffs in two occasions do not support a finding that the Defendants failed to timely address Plaintiff's complaints about the manner he was handcuffed. The facts also do not support a finding that Defendants acted in a way that posed a serious risk of exacerbating Plaintiff's alleged injury.

The Court upon reviewing the facts in the light most favorable to the Plaintiff finds that there was no constitutional violation because Defendants did not use unreasonable force when arresting Plaintiff.

### b. Clearly Established Law

In response to the second prong of the summary judgement test, Plaintiff alleges he has satisfied his burden. Specifically, he contends that it is established law that a triable claim of excessive force exists where a jury could reasonably conclude that the arresting officers handled the arrestee in a manner that posed serious risk of exacerbating an arrestee's injuries. Here, because this Court concludes that there was no constitutional violation in Defendants' use of force against Plaintiff, it is unnecessary to address the "clearly established law" prong of the test. *See Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996) ("Unless the plaintiff carries its twofold

burden, the defendant prevails.") The Court grants summary judgement based on qualified immunity to the Defendants.

### 2. Supplemental Jurisdiction over the New Mexico Tort's Claims Act

This Court now turns to the Plaintiff's claim under the NMTCA. Under 28 U.S.C. Section 1367(a) and the common law, a federal court may exercise supplemental jurisdiction over state law claims that are "so related" to the federal claim "that they form part of the case or controversy…" A federal court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Upon dismissing all federal claims, the court "usually should, decline to exercise jurisdiction over any remaining state claims." *Crane v. Utah Dept. of Corrections*, 15 F.4th 1296, 1314 (10th Cir. 2021) (citing *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011)). Under Section 1367(d), the plaintiff's state-law claims "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed." 28 U.S.C. § 1367(d).

Here, the Court grants Defendants' motion for summary judgment, finding that the Defendants are entitled to qualified immunity, and dismisses Plaintiff's federal claims. The Court declines to exercise supplemental jurisdiction and therefore will remand Plaintiff's remaining claim.

## V.
## CONCLUSION

For the foregoing reasons, the Court finds that Defendants are entitled to qualified immunity as it pertains to Plaintiff's Section 1983 claim for excessive force. The Court declines to rule on Plaintiffs claim under the NMTCA.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (**Doc. 12**) is GRANTED. The Court declines to exercise supplemental jurisdiction, and all state law

claims are REMANDED to the State of New Mexico, County of Rio Arriba, First Judicial District Court.

    IT IS SO ORDERED.

                            HON. DAVID HERRERA URIAS
                            UNITED STATES DISTRICT JUDGE